UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAMAL RAJ,

                  Petitioner(s),

    v.

MARKWAYNE MULLIN, et al.,

                  Respondent(s).

CASE NO. C26-1323-KKE

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting that his re-detention without a hearing violated his right to due process. Dkt. No. 1. The Government[1] filed its return and briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 4, 7. For the reasons below, the Court will grant Petitioner's habeas petition and order the Government to provide him with a constitutionally sufficient bond hearing.

## I.    BACKGROUND

Petitioner is a native and citizen of India who entered the United States via Chicago O'Hare International Airport in March 2021 with a B1/B2 non-immigrant visa valid through February 1, 2028. Dkt. No. 6 ¶¶ 3–4. Petitioner was questioned by United States Customs and Border Protection ("CBP") upon his arrival and admitted that he had worked in the United States for five

---

[1] This order refers to the federal Respondents—the Secretary of the United States Department of Homeland Security, the Acting United States Attorney General, the Dounited States Immigration and Customs Enforcement's Acting Director and Acting Seattle Field Office Director—collectively and interchangeably as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

months during 2019 without work authorization. *Id*. ¶ 6. CBP canceled Petitioner's visa, issued him an expedited order of removal, and detained him. *See id*. ¶¶ 7–8, Dkt. No. 5-2 at 2–3, Dkt. No. 5-6. Petitioner then raised a fear of returning to India. Dkt. No. 6 ¶ 7.

In May 2021, Petitioner was released on parole under Section 212(d)(5)(A) of the Immigration and Nationality Act ("INA") and served with a notice to appear, indicating that he was subject to removal for his visa fraud/misrepresentation. Dkt. No. 6 ¶ 9; Dkt. Nos. 5-1, 5-4. Petitioner enrolled in the Alternatives to Detention program and was fit with a GPS ankle monitor. Dkt. No. 6 ¶ 10.

In July 2021, Petitioner filed an application for asylum and withholding of removal. Dkt. No. 6 ¶ 12. Petitioner filed amended applications for asylum and withholding of removal three years later, while his first application was still pending. Dkt. No. 5-7. A hearing was held on his applications in July 2025, and the immigration judge found that all applications were incomplete and concluded that Petitioner had abandoned his claims for relief. *Id*. The immigration judge ordered Petitioner removed to India. *Id*. Petitioner filed a timely appeal with the Board of Immigration Appeals, which is still pending. Dkt. No. 6 ¶ 14.

On April 6, 2026, the GPS signal indicated that Petitioner's ankle monitor had been discarded on the side of a road. Dkt. No. 6 ¶ 15. On April 7, 2026, Petitioner was returned to the United States by Canadian officials at the border crossing in Sumas, Washington, after he was denied entry into Canada as an asylum seeker under the Safe Third Country Agreement ("STCA"). *Id*. ¶ 16. On that date, the Government issued a notice of custody determination, stating that Petitioner would be detained "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations[.]" Dkt. No. 5-8. Petitioner signed the notice and requested that an immigration judge review it, although he has not received a bond hearing since

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

he was re-detained. *Id.*; Dkt. No. 6 ¶ 18. On April 10, 2026, he entered the Northwest ICE Processing Center, where he remains detained. Dkt. No. 6 ¶ 17.

Petitioner filed the pending habeas petition on April 17, 2026, arguing that he was entitled to notice and an opportunity to be heard before he was re-detained or, in the alternative, that he is entitled to a bond hearing.

## II.    ANALYSIS

**A.    Legal Standards**

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

**B.**     **Petitioner is Detained Under 8 U.S.C. § 1226, as the Government Stated in the Custody Redetermination Notice, and He Is Therefore Entitled to a Bond Hearing.**

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government argues that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) as an applicant for admission to the United States because his parole had expired after one year or, in the alternative, it automatically terminated when he entered Canada. Dkt. No. 4 at 7–10.  Petitioner argues that he is subject to discretionary detention under 8 U.S.C. § 1226(a).  Dkt. No. 1 ¶ 44.

United States Department of Homeland Security ("DHS") regulations set forth conditions under which the DHS Secretary and the Secretary's delegees may grant and terminate parole.  *See* 8 C.F.R. § 212.5(e).   Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice."  *Id.* §§ 212.5(e)(1), (e)(2).   Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized."  *Id.* § 212.5(e)(1).  When

a noncitizen's parole has been terminated, the regulations require that "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i). An applicant for admission who was previously paroled into the United States may be returned to custody when parole expires or is terminated. *See* 8 U.S.C. § 1182(d)(5)(A).

Thus, according to the Government, Petitioner's parole automatically terminated either upon the expiration of his parole in May 2022, or when he left the United States to enter Canada in April 2026. Dkt. No. 4 at 7–10. The Government argues that because either of those two circumstances do not require notice before parole can be revoked, Petitioner's status reverted to his status before he was paroled, and the Government was entitled to treat him as an "arriving alien" subject to mandatory detention under Section 1225(b). *See id.* at 9. In so arguing, the Government contends that "there is no evidence that DHS has ever treated Petitioner as being subject to the discretionary detention scheme under § 1226(a)." *Id.* at 10.

The Government's argument is undermined by the record, however: the April 2026 notice of custody determination states that Petitioner is detained under 8 U.S.C. § 1226. *See* Dkt. No. 5-8. The Government did not cite Section 1225(b) as its detaining authority at the time that it detained Petitioner a month ago; it instead cited Section 1226 and offered him the opportunity to request that an immigration judge review the custody determination. *See id.* The Government's litigation position that Petitioner is subject to mandatory detention under Section 1225(b) is therefore at odds with the record.

Second, the Government's litigation position is also at odds with orders issued by many courts that have considered the issue. Courts throughout this circuit have found that where a noncitizen's parole has expired, and the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so, the noncitizen's liberty interest continues to grow post-expiration and is incompatible with mandatory detention. *See, e.g.*, *D.L.C. v. Wofford*, ___ F.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

Supp. 3d __, 2026 WL 145646, at *4–5 (E.D. Cal. Jan. 20, 2026); *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–09 (E.D. Cal. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179–80 (D. Nev. 2025) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025)); *Lazard v. Divver*, No.: 26-CV-1778 JLS (JLB), 2026 WL 948400, at *3 n.2 (S.D. Cal. Apr. 8, 2026).

That Petitioner left the United States to pursue asylum in Canada distinguishes his situation from these expired-parole cases, however, as well as the case that Petitioner contends is "materially indistinguishable" from this case. *See* Dkt. No. 7 at 8 (citing *Prince v. Noem*, No. 2:26-cv-00533-GJL (W.D. Wash. 2026)). This is because the DHS regulations provide that humanitarian parole terminates automatically, without written notice, if the parolee departs the United States. *See* 8 C.F.R. § 212.5(e)(1). Petitioner's traverse does not deny that he departed the United States. *See* Dkt. No. 7 at 2 ("[Petitioner] was escorted back to the United States by Canadian Border Services Agency officers after Canada refused to process his asylum request under the STCA."). The Court thus does not find that Petitioner was entitled to a pre-deprivation hearing before his parole could be revoked.

This is not the end of the inquiry, however, because even if the Government was entitled under the regulations to revoke Petitioner's parole without notice, it does not follow that Petitioner is subject to mandatory detention and not entitled to a bond hearing, particularly because the Government offered him such a hearing when they detained him. *See* Dkt. No. 5-8. The Court finds that Petitioner's constitutional right to due process requires a bond hearing, because (1) he has a constitutionally protected liberty interest as a person who was previously paroled, (2) the risk of erroneous deprivation of his liberty interest is high where the Government acknowledged Petitioner's right to a bond hearing and yet refuses to provide one, and (3) the administrative and/or financial costs of providing a bond hearing are far outweighed by the risk of erroneous deprivation

of the liberty interest at issue.  All three *Mathews* factors thus favor Petitioner, and the Court's review of them indicates that Petitioner's detention without a bond hearing violates due process.

### III.      REMEDY

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's detention to be unlawful and will grant the habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).  "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require."  *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  "Declaratory and injunctive relief are proper habeas remedies."  *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is to require the Government to provide the bond hearing that it previously offered Petitioner.  *See* Dkt. No. 5-8.  At this hearing, the Government must demonstrate the justification for detention by clear and convincing evidence.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096 (E.D. Cal. 2025).

### IV.  CONCLUSION

For these reasons, the Court GRANTS the habeas petition.  Dkt. No. 1.  The Court ORDERS that the Government shall provide Petitioner an individualized bond hearing no later than May 19, 2026, where the Government must demonstrate the justification for detention by clear and convincing evidence.  The Government shall file a status report no later than May 22, 2026, to confirm that Petitioner was provided the bond hearing as described in this order.

/

/

/

The Court will consider any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 12th day of May, 2026.

Kymberly K. Evanson
United States District Judge